**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SALMON LICENSING LLC, | |
| Plaintiff, | |
| v. | C.A. No._____ |
| WILSON ELECTRONICS, LLC | **TRIAL BY JURY DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Salmon Licensing LLC ("Salmon Licensing"), by and through its undersigned counsel, for its Complaint against Wilson Electronics, LLC ("Wilson" and/or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 1 *et seq*., including 35 U.S.C. § 271.

**THE PARTIES**

2.      Plaintiff Salmon Licensing LLC is a Delaware limited liability company having a registered agent whose place of business is located at 222 Delaware Avenue, 9th floor, Wilmington, New Castle County, Delaware 19801.

3.      On information and belief, Defendant is a Delaware corporation with its principal place of business at 3301 E. Deseret Drive, St. George, UT 84790.  Defendant may be served with process via its registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.      Defendant is in the business of making, using, selling, offering for sale and/or importing repeater systems, such as, for example, consumer signal boosters.

5.      In 2009, Wilson petitioned the FCC to implement rules governing consumer signal boosters.  Petition for Rulemaking of Wilson Electronics, Inc., at 4, WT Docket No. 10-4 (filed Nov. 3, 2009).

6.      On April 6, 2011, the Federal Communications Commission ("FCC") issued a Notice of Proposed Rule Making ("NPRM") with the following title and citation: Amendment of Parts 1, 2, 22, 24, 27, 90 and 95 of the Commission's Rules to Improve Wireless Coverage Through the Use of Signal Boosters, *Notice of Proposed Rulemaking*, 26 FCC Rcd 5490, 5527, ¶ 106 (2011).

7.      On July 25, 2011, Verizon Wireless, Wilson Electronics, and V-COMM submitted a solution (Joint Proposal) for the design and operation of signal boosters.  *Ex Parte* Letter from Russell D. Lukas, Counsel to Wilson Electronics, Inc., and John T. Scott, III, Counsel to Verizon Wireless, to Marlene H. Dortch, Secretary, Federal Communications Commission (July 25, 2011) (Joint Proposal).   The Joint Proposal set forth technical specifications for consumer-targeted boosters "designed to enable signal boosters to be installed by consumers and operated without causing harm to wireless networks."

8.      Subsequently, Verizon Wireless, Wilson Electronics, T-Mobile, Nextivity, and V-COMM submitted a combined proposal (Consolidated Proposal) consisting of a set of proposed rules that would apply to all consumer-targeted boosters, including two separate "Safe Harbors" for provider-specific ("Safe Harbor 1") and wideband boosters ("Safe Harbor 2"). *Ex Parte* Letter from Michiel Lotter, Nextivity, Sean Haynberg, V-COMM, L.L.C., Russell D. Lukas, Counsel to Wilson Electronics, Inc., Steve Sharkey, Chief, Engineering and Technology

Policy, T-Mobile, USA, and John T. Scott, Verizon Wireless, to Marlene H. Dortch, Secretary, Federal Communications Commission (June 8, 2012).

9.      In addition to the Joint Proposal and Consolidated Proposal, Defendant Wilson submitted multiple comments and letters to the FCC during the rulemaking process, including but not limited to the following: *Ex Parte* Letter from Russell D. Lukas to Marlene H. Dortch, Secretary, Federal Communications Commission (May 12, 2010); *Ex Parte* Letter from Russell D. Lukas, Counsel, Wilson Electronics, Inc. to Marlene H. Dortch, Secretary, Federal Communications Commission (Mar. 1, 2012); *Ex Parte* Letter from John T. Scott, Verizon Wireless, and Russell D. Lukas, Counsel to Wilson Electronics, Inc., to Marlene H. Dortch, Secretary, Federal Communications Commission (Mar. 14, 2012) (Verizon/Wilson Mar. 14, 2012 Ex Parte Letter).

10.      After receiving comments and proposals, such as the Joint Proposal and Consolidated Proposal, from numerous and various stakeholders, the Federal Communications Commission ("FCC") issued a Report and Order that implemented new requirements for consumer signal boosters on February 20, 2013.

11.      In the February 20, 2013 Report and Order, the FCC found "that the public interest would be served by requiring all Consumer Signal Boosters to comply with a Network Protection Standard."  Report and Order at p. 23. As stated in the Report and Order, "Under the Network Protection Standard, all Consumer Signal Booster must: (1) comply with existing technical parameters for the applicable spectrum band of operation; (2) automatically self-monitor certain operations and shut down if not in compliance with our new technical rules; (3) automatically detect and mitigate oscillations in the uplink and downlink bands; (4) power down or shut down automatically when a device is not needed, such as when the device approaches

the base station with which it is communicating; (5) be designed so that these features cannot be easily defeated; and (6) incorporate interference avoidance for wireless subsystems." *Id.* The FCC noted that "all of these requirements are included within the Consolidated Proposal set forth by Verizon, T-Mobile, Wilson, and Nextivity and endorsed by AT&T, Sprint, RTG, and CCA." *Id.*

12.     After the Report and Order was issued, in a Press Release on February 20, 2013, Wilson praised the FCC's adoption of the rules.

13.     The February 20, 2013 Press Release quoted Wilson's CEO, as saying: "Wilson Electronics applauds the adoption of FCC certification specifications for consumer cell phone signal boosters, which will eliminate poorly designed products that currently plague the market, and have been a source of cell site interference.  Today's outcome is a major victory not only for our industry, but also for the end users who benefit from added levels of safety, security and satisfaction with their service through the use of signal boosters. We realize the issue of third-party signal boosters operating under cellular carriers' licenses is complex, and we commend the FCC, its Wireless Telecommunications Bureau, and all the parties that assisted in developing the approved standards and finding a solution to an issue that once seemed insurmountable."

14.     With respect to the requirements issued in the Report and Order, Wilson's February 20, 2013 Press Release stated "The FCC has issued new rules for cellular signal boosters that require the devices to abide by technical requirements that prohibit them from interfering with wireless networks and cause interference to other calls, including emergency and 911 calls. The new order increases technical requirements for cellular signal booster specifications and defines their use by consumers."

15.     The final rules adopted in the Report and Order were published in the Federal Register on April 11, 2013, *see* 78 FR 21559, and became effective on May 13, 2013, except for amendments to §§ 1.1307(b)(1), 20.3, 20.21(a)(2), 20.21(a)(5), 20.21(e)(2), 20.21(e)(8)(i)(G), 20.21(e)(9)(i)(H), 20.21(f), 20.21(h), 22.9, 24.9, 27.9, 90.203(q), 90.219(b)(1)(i), 90.219(d)(5), and 37 47 C.F.R. § 90.219(e)(5), which contain information collection requirements that are not effective until approved by the Office of Management and Budget ("OMB").

16.     For products with FCC ID PWO460001, FCC ID PWO460002, FCC ID PWO460003, FCC ID PWO460004, FCC ID PWO460005, FCC ID PWO460006, FCC ID PWO460007, FCC ID PWO460008, FCC ID PWO460009, FCC ID PWO460011 and FCC ID PWO460013, Wilson Electronics submitted a letter of attestation to the FCC attesting that the following facts are true: a) "Network Protection Standard (NPS) and other compliance/safeguards features have been implemented;" b) "NPS and other compliance/safeguards features are defaulted to be "On" (in operation);" c) "NPS and other compliance/safeguards features cannot be reconfigured, disabled or removed;" d) "this consumer booster is not user programmable, does not need fine tuning or adjustment, does not require professional installation. However, in case booster indicator lights show the need, the gain may be adjusted as described in the User Manual. Such adjustments are "fail safe", i.e., they will not enable the booster to be non-compliant to NPS or other compliance/safeguard requirements;" and e) "future software updates will not cause non-compliance."

17.     The rules in the Report and Order required that by March 1, 2014, the sale and marketing deadline in Section 20.21(g), all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

18.     Following the release of the Report and Order, the Telecommunications Certification Body Council began developing laboratory test procedures in order to test signal boosters for compliance with the newly adopted Section 20.21 requirements.

19.     As of the time of filing of this complaint, Wilson had submitted more than 10 models for certification under the new rules.

20.     On February 11, 2014, the FCC's Wireless Telecommunications Bureau waived the March 1, 2014, sale and marketing deadline in Section 20.21(g) and extended it for 60 days, until April 30, 2014, the deadline by which all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

21.     The FCC's Wireless Telecommunications Bureau has granted no other extensions for by which all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

22.     Accordingly, at the time of the filing of this complaint, all Consumer Signal Boosters, including Wilson's, marketed, distributed or sold in the United States must comply with Section 20.21.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

24.     This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction, as well as because of the injury to Salmon Licensing and the cause of action Salmon Licensing has raised, as alleged herein.

25.     Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Delaware Long-Arm Statute, Del Code. Ann. Tit. 3, § 3104, due to at least its substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Delaware.

26.     Defendant has conducted and does conduct business within the state of Delaware, directly or through intermediaries, resellers, agents, or offers for sale, sells, and/or advertises products in Delaware that infringe the Asserted Patent (as defined below).

27.     In addition to Defendant continuously and systematically conducting business in Delaware, the causes of action against Defendant are connected (but not limited) to Defendant's purposeful acts committed in the state of Delaware, including Defendant's making, using, importing, offering for sale, or selling products which include features that fall within the scope of at least one claim of the Asserted Patent.

28.     Venue lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has committed and continues to commit acts of patent infringement in this District.  For example, Defendant has used, sold, offered for sale, and/or imported infringing products in this District.

## THE PATENT-IN-SUIT

29.     There is one patent at issue in this action: United States Patent Nos. 6,748,194 (the "'194 Patent" or the "Asserted Patent"). A copy of the '194 Patent is attached hereto as Exhibit A.

30. On June 08, 2004, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '194 Patent, entitled "Repeater system having oscillation preventing function and automatic reverse output disabling function for non-subscriber and control method thereof" after a full and fair examination. The '194 Patent contains two independent claims and four dependent claims.

31. Salmon Licensing presently is the owner of the '194 Patent and possesses all right, title and interest in and to the '194 Patent.

32. Salmon Licensing owns all rights of recovery under the '194 Patent, including the exclusive right to recover for past infringement.

33. Pursuant to 35 U.S.C. § 282, the '194 Patent is presumed valid and enforceable.

34. Defendant commercializes, *inter alia*, devices which include all of the elements recited in one or more claims of the '194 Patent.

## DESCRIPTION OF THE ACCUSED INSTRUMENTALITIES

35. Defendant's infringing products, when used, receive data from an external base station transceiver system, amplify the data, and transmit the data to a mobile device after converting the amplified data to a service frequency, as well as, transmit data received from a mobile device to the base station transceiver system, but only when the output signal of the receiver is not above a first reference value during a first time or not below a second reference value during a second time (hereinafter, "Infringing Products").

36. Defendant's Infringing Products include but are not limited to Wilson's "AG Pro 4G formerly the AG Pro Quint," "DT4G," "DB Pro 3G," "DB Pro 4G," "Sleek," "Sleek 4G," "Mobile 3G," and "Mobile 4G" cellular signal boosters.

37.     Each of Wilson's Infringing Products contain components that perform at least the actions as described in paragraph 35.

## COUNT I:
## INFRINGEMENT OF THE '194 PATENT

38.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-37.

39.     Defendant directly infringes at least claim 1 of the '194 Patent by making, using, selling, offering for sale and/or importing the Infringing Products.

40.     Defendant has indirectly infringed and continues to indirectly infringe the '194 Patent by actively inducing its customers, users, and/or licensees to directly infringe by using the Infringing Products.

41.     Defendant has had knowledge of infringement of the '194 Patent at least as of the service of the present complaint.

42.     Accordingly, at least as of service of the present complaint, Defendant has engaged or will have engaged in inducing its customers to directly infringe the '194 Patent at least by using the Infringing Products with knowledge that its customers' acts constitute direct infringement. For example, at least as of service of the present complaint, Defendant knows that its customers use of the Infringing Products is facilitated by the system described in the '194 Patent.

43.     Furthermore, through its website, Defendant sells, offers to sell and advertises the Infringing Products, in this District and elsewhere in the United States, specifically intending that its customers use the Infringing Products.

44.     Moreover, Defendant's website provides information related to the features and benefits of the Infringing Products, thus encouraging its customers to use the Infringing Products.

45.     In addition, Defendant induces infringement through its technical support services by instructing its customers to use the Infringing Products.

46.     As a direct and proximate result of Defendant's indirect infringement by inducement of the '194 Patent, Plaintiff has been and continues to be damaged.

47.     Defendant has contributorily infringed and continues to contributorily infringe the '194 Patent by selling and/or offering to sell the Infringing Products, whose infringing features are not a staple article of commerce and when used by a third-party, such as a customer, can only be used in a way that infringes the '194 Patent.

48.     At least as of service of the complaint, Defendant has sold or offered to sell or will have sold or offered to sell the Infringing Products with knowledge of the '194 Patent and knowledge that the Infringing Products constitute a material part of the invention claimed in the '194 Patent, such that their use by third-parties, such as a customer, constitute infringement of the '194 Patent.

49.     As a direct and proximate result of Defendant's contributory infringement of the '194 Patent, Plaintiff has been and continues to be damaged.

50.     Defendant has committed these acts of infringement without license or authorization.

51.     By engaging in the conduct described herein, Defendant has injured Salmon Licensing and is thus liable for infringement of the '194 Patent, pursuant to 35 U.S.C. § 271.

52.   As a result of Defendant's infringement of the '194 Patent, Salmon Licensing has suffered harm and monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

53.   Salmon Licensing will continue to suffer harm and damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Salmon Licensing is entitled to compensation for any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

### DEMAND FOR JURY TRIAL

54.   Salmon Licensing demands a trial by jury of any and all causes of action.

### PRAYER FOR RELIEF

Salmon Licensing respectfully prays for the following relief:

A.   That Defendant be adjudged to have infringed the Asserted Patent;

B.   That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly and/or indirectly infringing the Asserted Patent;

C.   An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Salmon Licensing for Defendant's past infringement and any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D.   An assessment of pre-judgment and post-judgment interests and costs against Defendant, together with an award of such interests and costs, in accordance with 35 U.S.C. § 284;

E.     That Defendant be directed to pay enhanced damages, including Salmon Licensing's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

F.     That Salmon Licensing be given such other and further relief as this Court may deem just and proper.


Dated: August 14, 2014                    BAYARD, P.A.

OF COUNSEL                                */s/ Stephen B. Brauerman*
                                          Richard D. Kirk (#922)
Eugenio J. Torres-Oyola                   Stephen B. Brauerman (#4952)
Ferraiuoli LLC                            Vanessa R. Tiradentes (#5398)
221 Plaza, 5th Floor                      Sara E. Bussiere (#5725)
221 Ponce de León Avenue                  222 Delaware Avenue, Suite 900
San Juan, PR 00917                        P.O. Box 25130
(787) 766-7000                            Wilmington, DE  19899
etorres@ferraiuoli.com                    (302) 655-5000
                                          rkirk@bayardlaw.com
                                          sbrauerman@bayardlaw.com
                                          vtiradentes@bayardlaw.com
                                          sbussiere@bayarlaw.com

                                          *Attorneys for Plaintiff Salmon Licensing LLC*